Lewis F. JEFFERS and Minnie B. Jeffers

v.

The UNITED STATES.

No. 432–73.

United States Court of Claims.

May 18, 1977.

John S. Nolan, Washington, D. C., atty. of record, for plaintiffs. Robert L. Moore, II, and Miller & Chevalier, Washington, D. C., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Acting Asst. Atty. Gen. Myron C. Baum, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Senior Judge, DAVIS, Judge, SKELTON, Senior Judge, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges, en banc.

ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge:

Plaintiffs initiated this action to recover for the calendar year 1971 taxes allegedly overpaid in the amount of $25,995, together with interest thereon as provided by law. Since the facts essential to the resolution of the issues in this case are not in dispute, the parties cross move for partial summary judgment with respect to all issues raised by the pleadings except for the counterclaim asserted by defendant in its first amended answer. Although we are confronted with ancillary issues, the ultimate issue with which we are faced is whether contingent payments of stock in a tax-free reorganization under I.R.C. § 368(a)(1)(A) are considered deferred payments to which I.R.C. § 483 would apply.[1]

For the reasons set forth below, we agree with the defendant that § 483[2] applies to

---

1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.

2. SEC. 483. [as added by the Revenue Act of 1964, Pub.L.No.88–272, § 224(a), 78 Stat. 19.] INTEREST ON CERTAIN DEFERRED PAYMENTS.

"(a) *Amount Constituting Interest.*—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

"(b) *Total Unstated Interest.*—For purposes of this section, the term 'total unstated interest' means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

(1) the sum of the payments to which this section applies which are due under the contract, over

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary or his delegate. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

"(c) *Payments to Which Section Applies.*—

(1) *In general.*—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

the instant transaction; and we remand the case to the trial division for further proceedings with respect to the defendant's counterclaim raised by its first amended answer.

The plaintiffs[3] are individuals, husband and wife, who prior to March 1967 owned 81,035 shares of the 743,109 outstanding shares of common stock of Hayes International Corporation ("Hayes"). Hayes was engaged in the government contracting business, doing work for various agencies of the United States Government in the air and aerospace fields. Hayes, interested in expanding its business to its full potential in the aerospace industry, sought to acquire financial strength through a merger with another corporate entity.

The representatives of Hayes discussed the possibility of merger with the officers of City Investing Company ("City"). In discussing the proposed merger of Hayes and City, the boards of directors of Hayes and City agreed that in the event that the merger was consummated, the business operations of Hayes should continue in the form of a separate corporation which would operate as a subsidiary of City. However, the representatives of Hayes and City could not reach an agreement as to the value of the Hayes' assets and business. Accordingly, the representatives negotiated an agreement which provided that, in addition to City common stock, the Hayes shareholders would receive from City nontransferable certificates of contingent interest which would entitle them to additional shares of City stock based upon the earnings performance of Hayes, operating as a subsidiary of City, over a five-year period.

The merger of City and Hayes was executed pursuant to a merger agreement dated October 6, 1966. The plan provided that upon completion of the merger the shareholders of Hayes would receive, in exchange for their shares of Hayes, shares of common stock of City and certificates of contingent interest entitling them to additional shares of common stock of City upon certain conditions. The merger plan, as well as the certificates of contingent interest, specified the aggregate dollar value of the maximum number of contingent shares that could be issued to the certificate holders. The additional shares were to be issued if the cumulative earnings of the business formerly carried on by Hayes reached $7,500,000 during a five-year earnings period commencing at the effective date of the merger. However, prior to the issuance of the additional shares, the Hayes sharehold-

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.

Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

(2) *Treatment of evidence of indebtedness.* —For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.

"(d) *Payments That Are Indefinite as to Time, Liability, or Amount.*—In the case of a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange, this section shall be separately applied to such portion as if it (and any amount of interest attributable to such portion) were the only payments due under the contract; and such determinations of liability, amount, and due date shall be made at the time payment of such portion is made.

\* \* \* \* \* \*

"(f) *Exceptions and Limitations.*—

\* \* \* \* \* \*

(3) *Treatment of seller.*—In the case of the seller, the tax treatment of any amounts received on account of the sale or exchange of property shall be made without regard to this section if no part of any gain on such sale or exchange would be considered as gain from the sale or exchange of a capital asset or property described in section 1231."

\* \* \* \* \* \*

3. The plaintiff, Minnie B. Jeffers, is a party to this action solely by reason of filing a joint federal income tax return with her husband, Lewis F. Jeffers, for the year 1971.

ers would have no voting or dividend rights with respect to those shares.

In order to determine the tax consequences of the proposed merger, tax counsel for Hayes filed a private ruling request with the Internal Revenue Service ("IRS") by letter dated October 12, 1966. With respect to the tax consequences of the proposed merger and the exchange by the shareholders of Hayes of their common stock and certificates of contingent interest, tax counsel requested rulings under §§ 368(a)(1)(A), 316, 354, 356 and 362.

By letter dated December 15, 1966, the IRS issued the rulings requested by Hayes' tax counsel. With respect to the tax treatment of the Hayes shareholders, the ruling stated as follows:

      \*     \*     \*     \*     \*     \*

(4) In accordance with the provisions of section 354(a)(1), no gain or loss will be recognized to the shareholders of Hayes on the receipt by them of shares of City stock (including City stock issuable by reason of the certificates of contingent interest and any fractional share interests to which they may be entitled) in exchange for their shares of Hayes stock. The certificates of contingent interest received by the shareholders of Hayes will not constitute the receipt of additional consideration within the meaning of section 356.

(5) The basis of the stock of City received by the shareholders of Hayes (including City stock issuable by reason of the certificates of contingent interest and any fractional share interests to which they may be entitled) will be the same as the basis of the stock surrendered therefor (section 358(a)(1)). Until the additional shares are issued by reason of the certificates of contingent interest, the basis will be determined as though the maximum number of shares issuable were received.

      \*     \*     \*     \*     \*     \*

No opinion is expressed as to the tax treatment of the transaction under the provisions of any of the other sections of the Code and Regulations which may also be applicable thereto or to the tax treatment of any conditions existing at the time of, or effects resulting from, the transaction which are not specifically covered by the above rulings.

After receipt of the private letter ruling from the IRS, the board of directors of Hayes consummated the merger with City in March 1967. As a result of the merger, plaintiffs, who held 81,035 shares of the 743,109 shares of common stock of Hayes outstanding at the time of the merger, received 23,151 shares of the common stock of City and 81,035 certificates of contingent interest in exchange for their Hayes stock.

The agreement of merger and related documents did not specify that any part of the additional City stock to be issued to the holders of the certificates of contingent interest was issuable as or in lieu of interest, nor did those documents specify that any interest was to be paid in this connection.

The earnings goal of $7,500,000, which under the merger plan would trigger the issuance of additional shares of City common stock in exchange for the certificates of contingent interest was reached in 1971; thereupon, in 1971, plaintiffs received 28,079 shares of City stock in exchange for their certificates.

Plaintiffs timely filed a joint federal income tax return for the year 1971. In that return plaintiffs computed an interest element on their receipt of the additional City shares received in 1971 and reported that amount as ordinary income on their 1971 federal income tax return.[4] On June 26, 1973, plaintiffs timely filed a claim for refund for 1971 in the amount of $25,995, claiming that the sum of $97,565 was erroneously reported on their income tax re-

---

4. Prior to filing their federal income tax return for the calendar year 1971, plaintiffs received from City an IRS Form 1099 which set forth the amount of imputed or unstated interest to be $97,564.61. Based thereon, plaintiffs on their tax return included inadvertently under the heading "Dividend Income" instead of under the heading "Interest Income" the sum of $97,564 as income subject to federal income tax.

turn, under the heading "Dividend Income," as interest income. Plaintiffs' claim was formally disallowed by the IRS by notice dated July 19, 1973. On November 15, 1973, plaintiffs filed a petition in this court based upon the grounds set forth in the July 19, 1973, claim for refund. During the course of litigation in this court, the plaintiffs raised an additional ground for recovery which was not set forth in the July 1973 claim; accordingly, on August 19, 1974, the plaintiffs timely filed an amended claim for refund with the IRS, submitting that additional ground for recovery.

In contending that § 483 does not apply to the City stock in question, plaintiffs pose alternative arguments that they are entitled to a refund of overpaid 1971 federal income taxes. Initially, plaintiffs contend that they reasonably relied upon the private letter ruling issued by the IRS with respect to the merger of Hayes into City; it is plaintiffs' position that the ruling precludes the application of § 483 to the City shares in issue. Alternatively, plaintiffs argue that the regulation which applies § 483 to "tax-free" corporate reorganizations is invalid, being contrary to the intention of Congress in enacting § 483 as well as contrary to statutory provisions applicable to corporate reorganizations.

Of course, defendant argues the opposite. With relation to the private letter ruling, defendant asserts that the plaintiffs cannot be said to have reasonably relied upon the ruling to support their conclusion because no ruling was requested or issued with respect to § 483. With relation to the regulations, defendant directs our attention to the statutory language and legislative history of § 483 which to defendant emphasize the "paramount application of Section 483 'for all purposes of the Code.'" We agree with the defendant, which is unfortunate for plaintiffs.

Both parties aptly direct the court to the legislative history of § 483.[5] However, each party when interpreting that history attributes a different intention to Congress for enacting the section. Both the plaintiff and the defendant agree that Congress was aware of a problem that certain deferred sales transactions could be structured so as to permit the buyer to convert ordinary income—interest—into capital gain merely by including the interest element in the purchase price.[6] To remedy the effect of treating unstated interest as capital gains, both parties agree that Congress enacted § 483. But this is where the agreement between the parties ends.

Plaintiffs argue that both the House Committee on Ways and Means and the Senate Finance Committee gave by example the type of tax manipulatory scheme that they intended to eliminate.[7] The example involved a typical installment sales arrangement in which an element of the

---

**5.** The legislative history for § 483 may be found at H.R.Rep.No.749, 88th Cong., 1st Sess. 4, 72–74, A84–A87 (1963), *reprinted in* [1964] U.S.Code Cong. & Admin.News, pp. 1316, 1380–83, 1509–15, hereinafter cited as "H.Rep."; S.Rep.No.830, 88th Cong., 2d Sess. 4, 101–104 (1964), *reprinted in* [1964]] U.S.Code Cong. & Admin.News, pp. 1676, 1774–77, hereinafter cited as "S.Rep."; S.Rep. 830, *supra*, Part 2, at 245, *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 1915; H.R.Conf.Rep. No.1149, 88th Cong., 2d Sess. 10, 41 (1964), *reprinted in* 1964–1 C.B. (Part 2) 774, 783; 109 Cong.Rec. 17910 (1963) (remarks of Mr. Mills); 110 Cong.Rec. 1454 (1964) (remarks of Senator Long); 1 *Senate Hearings on H.R. 8363 Before the Committee on Finance on the Revenue Act of 1963*, 88th Cong., 1st Sess. 37, 146, 238, 314, 433 (1963), hereinafter cited as "Senate Hearings"; 2 *Senate Hearings, supra* at 482; 3 *Senate Hearings, supra* at 1423, 1431–32, 1493–94; 4 *Senate Hearings, supra* at 1923, 1984, 1987; 5

*Senate Hearings, supra* at 2071, 2086, 2140, 2170, 2261, 2316, 2415, 2564; 1 *House Hearings Before the Committee on Ways and Means on President's 1963 Tax Message*, 88th Cong., 1st Sess. 152–56 (1963), hereinafter cited as "House Hearings"; 4 *House Hearings, supra* at 2144, 2151, 2325; 5 *House Hearings, supra* at 2560, 2852; and *Impact of Current Tax Proposals on Small Business: Senate Hearings on H.R. 8363 Before the Subcommittee of the Select Committee on Small Business*, 88th Cong., 1st Sess. 75–76 (1963).

**6.** H.Rep.No.749, *supra* note 5, at 72, *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 1380; S.Rep.No.830, *supra* note 5, at 101–102, *reprinted in* [1964] U.S.Code Cong. & Admin. News, p. 1774.

**7.** *Id.*

agreed purchase price is actually an add-on to compensate the seller for the fact that he is not currently receiving full payment. Plaintiffs argue that Congress, by this example, makes it clear that § 483 was enacted to remedy a particular type of tax manipulation whereby payments which in substance represented interest for the use of money were being taxed to the recipient at capital gains rates. In other words, plaintiffs reason that Congress enacted § 483 in order to tax at ordinary income rates certain gains which had previously been taxed at capital gain rates; to plaintiffs there is no indication that Congress was trying to convert a nontaxable transaction, such as the tax-free merger in issue, into a transaction which would be subjected, in part, to ordinary income taxes. Moreover, plaintiffs argue that the problem which Congress intended to remedy by the enactment of § 483 must be contrasted with the instant case in which the parties to the corporate merger could not agree upon the value of the Hayes stock to be surrendered. No portion of the additional shares which were to be transferred to the former Hayes shareholders in the event that Hayes had a favorable earnings performance was meant to compensate the former Hayes shareholders for the delay in payment; rather, plaintiffs contend, the additional shares were transferred solely to reflect the appropriate value of the Hayes stock at the time of the merger. Since the number of additional shares to be issued was solely dependent upon the earnings performance of the Hayes subsidiary, it is apparent, at least to plaintiffs, "that there was no correlation between the *amount* of the additional payment and the *timing* of that payment, as would exist in the unstated interest arrangement which was the target of Congress in enacting section 483." Plaintiffs thus conclude that since the legislative history to § 483 shows that Congress never

intended that the section be applied to nontaxable sales or exchanges of property, the regulations which attempt to extend the application of § 483 to a corporate reorganization should be held invalid because they conflict with the intention of Congress.

Defendant's approach to this problem is much more simplistic. Defendant argues as follows: out of the reorganization of Hayes and City, plaintiffs received a number of shares of stock in City and a contingent right to receive additional shares in the indefinite future; the deferred payment of City stock called for under the agreement was not made within one year of the original exchange of stock; where a payment is made more than one year after the exchange of property to which it relates, it automatically triggers the application of § 483, unless some exception applies. Defendant contends that whenever a payment is deferred for more than one year and the payee during the period of deferral foregoes interest on the deferred payment, then § 483 applies blindly and treats a portion of the deferred payment as interest without regard to the parties' reasons for not providing an interest factor. To defendant, § 483 is a common-sense provision based upon economic realities which creates a conclusive presumption that in covered circumstances the parties were attempting for income tax purposes to disguise the payment of interest.

Although plaintiffs' arguments are sophisticated and somewhat appealing, we feel that the law is with the defendant.

Recognizing that the regulations cover their case, plaintiffs assert that "[t]he Regulations (§ 1.483–1(b)) are arbitrary and unreasonable in that they enlarge the scope of section 483, contrary to its language and intent, and are contrary to the statutory provisions applicable to tax-free reorganizations and are accordingly invalid.[8] Conse-

---

8. Specifically, plaintiffs focus on Treas.Reg. § 1.483–1(b)(6) (1966) which applies § 483 to a corporate reorganization by means of the following example:

> *Example (7).* M Corporation and N Corporation each owns one-half of the stock of O

Corporation. On December 31, 1963, pursuant to a reorganization qualifying under section 368(a)(1)(B), M contracts to acquire the one-half interest held by N for an initial distribution on such date of 30,000 shares of M voting stock, and a nonassignable right to

quently, the question before us is whether these regulations constitute a reasonable exercise by the Commissioner of his statutory power to prescribe "all needful rules" for the proper enforcement of the tax laws,[9] or whether these regulations are so inherently unreasonable and inconsistent with the statute as to be invalid.[10]

■ Upon the facts presented in this case, we cannot say that the Commissioner's regulations are invalid; in other words, we do not find them unreasonable or plainly inconsistent with § 483 or the corporate reorganization provisions. In our opinion, the regulations are a reasonable interpretation of what some commentators intimate may be an unreasonable statute.[11]

At the heart of plaintiffs' argument that the regulations in issue arbitrarily and unreasonably enlarge the scope of § 483 is the notion that the reorganization provisions of the Code are exclusive with respect to any and all tax consequences relating to such transactions. However, this contention flies in the face of the Congressional intention expressed in the legislative history of § 483 "that part of each payment (under a contract for the sale or exchange of proper-

ty) to which section 483 applies is to be treated as interest *for all* purposes of the code."[12] Moreover, § 483 specifically governs "[f]or the purposes of this title [the Internal Revenue Code of 1954]"[13] the tax consequences of "*any* payment"[14] on account of "*any* contract for the sale or exchange of property"[15] which is capital or depreciable in nature,[16] where that payment is due more than one year after the date of the sale or exchange and the contract provides for "total unstated interest."[17] Furthermore, § 483(f) demonstrates that Congress expressly considered and provided for exceptions and limitations to the applicability of § 483. The exception provided by § 483(f)(3) makes it clear that § 483 is to apply to any deferred payment on account of a sale or exchange of capital or depreciable property; it is the sale or exchange of these type assets that Congress viewed as involving the potential for "manipulation of the tax laws" for which "corrective action is needed."[18] There is no indication in the literal terms of § 483 that Congress intended the statute not to apply to deferred payments of contingent stock arising out of a tax-free reorganization. Rather, the lan-

---

receive up to 10,000 additional shares of M's voting stock during the next 3 years, provided the net profits of O Corporation exceed certain amounts specified in the contract. No interest is provided for in the contract. No additional shares are received in 1964 or in 1965, but in 1966 the annual earnings of O Corporation exceed the specified amount and on December 31, 1966, an additional 3,000 M voting shares are transferred to N. Section 483 applies to the transfer of the 3,000 M voting shares to N on December 31, 1966. See example 2 of paragraph (e)(3) of this section for an illustration of the computation of total unstated interest in this case. *See also* Rev.Rul. 70–300, 1970–1 C.B. 125, *clarified by* Rev.Rul. 72–35, 1972–1 C.B. 139; and Rev.Rul. 72–32, 1972–1 C.B. 48.

**9.** Section 7805(a) expressly authorizes the Secretary or his delegate to "prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue."

**10.** *United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969).

**11.** *See Problems in Imputing Interest on Contingent Payments*, 23 J. of Tax. 191 (1965); Crestol, *Final Regs on Imputed Interest Call for Revised Tax Planning in Many Areas*, 25 J. of Tax. 2 (1966); *Does Imputed Interest Rule Apply to Reorganizations?*, 39 J. of Tax. 127 (1973); Murdoch, *Imputed Interest and Section 483*, 44 Taxes 866 (1966).

**12.** House Technical Explanations, H.Rep.No. 749, *supra* note 5, at A84 *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 1510; [emphasis supplied].

**13.** § 483(a).

**14.** § 483(c)(1); [emphasis supplied].

**15.** § 483(a); [emphasis supplied].

**16.** § 483(f)(3).

**17.** §§ 483(c)(1); (b).

**18.** H.Rep.No.749, *supra* note 5, at 72, [1964] U.S.Code Cong. & Admin.News, p. 1381; S.Rep.No.830, *supra* note 5, at 102; [1964] U.S. Code Cong. & Admin.News, p. 1775.

guage which Congress used for § 483 implies that Congress intended the section to have far-reaching consequences on the entire Internal Revenue Code. We do not find any indication in the legislative history of § 483 to the contrary.

Nevertheless, plaintiffs rely on the *Fox* case [19] to support their contention that the corporate reorganization provisions involved here should be given precedence over § 483. In *Fox*, a husband and wife entered into a divorce-related property settlement agreement which called for deferred payments over nine and one-half years, but which provided for the payment of no interest. The husband argued that he was entitled to an interest deduction under § 483 with respect to a portion of his divorce-related payments which were otherwise not deductible. The Third Circuit rejected the husband's contention and held that § 483 did not apply in that context. As we read *Fox*, we feel that it is distinguishable from the instant case.

The payments in *Fox*, if taxable, would have produced ordinary income to the wife [20] whom the Third Circuit viewed as the "seller." [21] Since in no event could the payments have produced capital gain to the wife-seller, the payments were excepted from § 483 by reason of § 483(f)(3). Although this is an alternative ground upon which the Third Circuit could have based its decision, we also view it as a basis for distinguishing the *Fox* case from the present proceeding. In the instant case, the realized gain from the transaction, if recognized, would be capital gain.

In any event, to further support their contention that the regulations in issue are invalid, plaintiffs argue that Congress did not intend to apply § 483 to nontaxable sales or exchanges of property, nor did Congress intend to apply § 483 to transactions, like the instant case, where the parties did not intend for any portion of the deferred payments of contingent stock to compensate themselves for the delay in payment. We do not subscribe to either of these arguments. First, plaintiffs fail to realize that the taxation of the gain realized by them is merely deferred. The carryover basis provisions applicable to the instant transaction [22] will cause the gain realized by plaintiffs to be subject to recognition whenever they sell the City stock. Furthermore, § 483(f)(3) and the legislative history to that exception give considerable insight into the situations excepted from the application of § 483. The relevant portions of that history are set forth in the margin.[23] We read that history to indicate that Congress intended § 483 to apply to a sale or exchange of capital or depreciable property, irrespective of whether gain or loss was realized or recognized. Stated dif-

---

**19.** *Fox v. United States*, 510 F.2d 1330 (3d Cir. 1975).

**20.** § 71.

**21.** 510 F.2d at 1332, note 5.

**22.** § 358(a).

**23.** "* * * Third, in the case of the seller, this provision [i. e., Section 483] is to apply only if some part of the gain from the sale or exchange of the property would be considered as gain from a capital asset or as gain from depreciable property. If the property is sold at a loss, this provision will nevertheless apply if, had there been a gain, some part of it would have been considered as gain from a capital asset or from depreciable property. * * *"

\* \* \* \* \* \*

H.Rep.No.749, *supra* note 5, at 73–74, *reprinted in* [1964] U.S.Code Cong. & Admin. News, p. 1382.

"*Treatment of seller*

"Paragraph (3) of section 483(f) excepts, in the case of the seller, amounts received on account of the sale or exchange of property from the tax treatment provided under section 483, if no part of any gain on such sale or exchange would be considered as gain from the sale or exchange of a capital asset or property described in section 1231 of the code. *The determination of whether this exception applies is made without regard to* whether, in fact, the sale or exchange results in a gain or *whether the gain (if any) would be recognized*, or whether section 1245 or section 1250 of the code applies to some or all of the gain (if any)." [Emphasis supplied.]

H.Rep.No.749, *supra* note 5, at A87, *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 1512.

ferently, we believe that Congress intended not to provide an exception for transactions in which gain was unrecognized, unless hypothetically considered all gain would have been ordinary in nature. Second, to plaintiffs' argument that § 483 does not apply because they did not intend for any portion of the deferred payments to compensate themselves for the delay in payment, we answer that nowhere in the statute or legislative history has Congress hinged the application of § 483 upon a showing of intentionality, or upon a showing that the amount to be paid bears a correlation to the timing of that payment.[24] Rather, based upon the potential for abuse, i. e., the potential for converting ordinary income into capital gain, and in view of the economic reality that a deferred payment is simply not equivalent to current payment whenever there exists "total unstated interest," Congress provided for the imputation of interest under § 483.

In our opinion, plaintiffs have failed to demonstrate a legislative intention which is contrary to the application of § 483 in these circumstances. As a result, we deem that the regulations in issue, which were promulgated under the statutory authority provided by § 7805, represent a reasonable and consistent interpretation of the statute; and we refuse to overrule them.[25] Nevertheless, we must consider plaintiffs' alternative argument that the private letter ruling issued by the IRS with respect to the merger of Hayes into City precludes the IRS from applying § 483 to the City shares in issue.

The private letter ruling, dated December 15, 1966, was issued at the request of plaintiffs' corporation. The corporation requested advice as to the income tax consequences of the then proposed reorganization under §§ 316, 354, 356, 362 and 368. The IRS

responded, in part, that the merger of Hayes into City qualified as a reorganization within the meaning of § 368(a)(1)(A), that no gain or loss would be recognized to the Hayes shareholders, that the "certificates of contingent interest" now at issue would "not constitute the receipt of additional consideration within the meaning of section 356," that the shareholders would have a carryover basis in their new stock based on the stock they surrendered, and that the IRS expressed "no opinion" on the tax consequences of the transaction under any Code provision not listed in the ruling. Plaintiffs argue that this ruling is inconsistent with the Commissioner's later assertion that plaintiffs received interest under § 483 when additional stock was transferred to them in 1971, as contemplated in the certificates of contingent interest.

■ In our opinion, there is no conflict between the ruling and the application of § 483 to the transaction. The ruling in clear terms denied that it was binding the IRS on any Code provision not specifically mentioned in the corporation's request and in the ruling, and § 483 was mentioned in neither. The ruling admittedly contains fairly sweeping statements of the tax consequences—"no gain or loss will be recognized," "the certificates * * * will not constitute the receipt of additional consideration," "the basis * * * will be the same as the basis of the stock surrendered." However, each such statement was referenced to an appropriate provision in the Code's reorganization sections, showing that the Service was not trying to take all possible tax consequences into account, but only those involving provisions requested by the corporation and expressly mentioned in the ruling. Thus, the ruling assured, and assured only, that no gain or loss would be

---

24. *See* § 483(d) which expressly applies § 483 to those payments which are indefinite as to time, liability or amount at the time of the initial exchange.

25. It should be noted that the plaintiffs in contending that the regulations in issue are invalid, have not advanced, nor have we considered for purposes of the instant case, the argument that

the Government may have been inconsistent in its position that § 483 applies to deferred payments of stock in reorganization exchanges, as compared to its position that § 483 does not apply to distributions in complete liquidation regardless of whether the corporation is liquidated in one distribution or in a series of distributions. Treas.Reg. § 1.483–1(b)(1) (1966).

recognized "[i]n accordance with the provisions of section 354(a)(1)," that receipt of the certificates would not be "boot" "within the meaning of section 356," and that a carryover basis would apply pursuant to "section 358(a)(1)." Further, while the ruling promised that receipt of the certificates of contingent interest in 1967 would not be considered "boot" under 356, it said nothing about receipt of the stock itself in 1971, which is the transaction which IRS now seeks to tax. At best the ruling leaves ambiguous and unresolved the matter whether § 483 plays a role in a stock-for-stock trade that otherwise qualifies as a tax-free reorganization.

Since we cannot say that either the regulations in issue are invalid or the private ruling is inconsistent with the application of § 483 to the transaction in issue, we must address the merits of the pertinent provisions of § 483 as those provisions involve the additional City stock transferred to plaintiffs in 1971, as contemplated in the certificates of contingent interest.

Focusing on the statutory framework applicable to corporate reorganizations, plaintiffs argue that § 483 does not apply to this case because there were no "deferred payments" within the scope of § 483. Plaintiffs point to revenue rulings,[26] regulations[27] and case law[28] which construe a contractual right to additional shares to be the same as the shares themselves for purposes of a qualifying corporate reorganization. Plaintiffs interpret this to mean that the certificates of contingent interest represent equity ownership as of the date of the reorganization. Making this the major premise to their hypothetical syllogism, plaintiffs deduce that the issuance of the City stock in exchange for the certificates of contingent interest does not constitute a deferred payment for purposes of § 483; rather, it is merely a subsequent change in the indicia of ownership, i. e.,

stock certificates for certificates of contingent interest. To support their conclusions plaintiffs rely on case law which states that if contingent interests are treated as if they are the shares of stock they represent, then the issuance of the certificates should not result in unfavorable tax consequences but should have the same effect as if the stock subject to the certificates had been issued at the time of the merger.[29] Since the Service determined in the Hayes' private letter ruling that for purposes of the corporate reorganization the plaintiffs possessed "stock" when they received the certificates of contingent interest, plaintiffs postulate that the defendant should not be permitted to contend that for other tax purposes, i. e., for § 483 purposes, the additional stock received after the reorganization is a deferred payment.

Initially, plaintiffs' argument had abstract appeal but upon closer analysis we find it invalid. The authorities relied upon by plaintiffs support the qualification of their merger transaction under § 368(a)(1)(A), but those authorities do not conflict with the application of § 483 to the deferred payment of stock provided for in the instant transaction. The focus of the reorganization provisions is upon *what* ultimately will be issued in exchange for the certificates of contingent interest, whereas the focus of the imputed interest provisions is upon *when* that ultimate issuance occurs. Although the contractual right represented by the certificates of contingent interest has been treated as meeting the "stock" requirement for purposes of qualifying as a reorganization, this does not mean that the deferred receipt of additional City stock was not *in fact* a deferred payment for purposes of § 483. That is, even though the contemplated payment is deferred in time from the initial sale or exchange and that deferred payment may qualify under the reorganization provisions because ultimate-

---

26. Rev.Rul. 66–112, 1966–1, C.B. 68; Rev.Rul. 67–90, 1967–1 C.B. 79.

27. Treas.Reg. § 1.368–1(b) (1955).

28. *Carlberg v. United States*, 281 F.2d 507 (8th Cir. 1960); *Hamrick v. Commissioner*, 43 T.C. 21 (1964), acq. 1966–1 C.B. 2.

29. *Carlberg v. United States, supra* note 28, at 519.

ly it must be in the form of stock, nonetheless, it may run afoul of § 483. The initial distribution of certificates of contingent interest is not a payment under § 483. Those instruments represent merely a conditional promise to make a payment in the future and are in the nature of evidences of indebtedness contemplated by § 483(c)(2).[30] Section 483(c)(2) makes it clear that these evidences of indebtedness are not to be treated as payments under § 483. Rather, the payments due under these evidences of indebtedness, i. e., the additional City stock, are expressly included within the scope of § 483.[31] Thus, the 1971 distribution of additional shares of City stock is the payment that is deferred. The fact that such payment may be indefinite as to time, liability or amount at the time of the initial exchange does not affect the application of § 483.[32]

■ Based on the foregoing, we hold that the requirements for the application of § 483 were met in this case.[33] Essentially, those requirements are: a sale or exchange of property; a payment due more than one year from the date of the sale or exchange; and total unstated interest. The sale or exchange requirement was met since the plaintiffs exchanged their Hayes stock for City stock and certificates of contingent interest in a merger governed by § 368(a)(1)(A); the delayed payment requirement was met since the 1971 distribution of the additional stock occurred more than one year from the date of the 1967 merger; and the requirement that there be total unstated interest was met since there was no provision in the plan of reorganization for the payment of any interest. Furthermore, the payment of the additional shares of City common stock was an indefinite payment under § 483(d) because the number and value of the additional shares

that could be distributed was dependent upon events that would occur after the merger. In other words, the amount of the future payment could not have been determined at the time of the merger.[34] Consequently, the determination as to the amount of the total unstated interest in this case must be made as of the time the additional shares were distributed.

## CONCLUSION

For the reasons stated above, we hold that the contingent payments of City stock received by the plaintiffs in 1971 are subject to the imputed interest provisions of § 483 and, consequently, that plaintiffs are not entitled to a refund of the taxes paid with respect to the imputed interest income. Accordingly, we grant defendant's motion for partial summary judgment, we deny plaintiffs' cross motion for partial summary judgment, and we remand the case to the trial division for further proceedings with respect to the counterclaim asserted by defendant in its first amended answer.

SKELTON, Senior Judge, with whom COWEN, Senior Judge, and BENNETT, Judge, join, dissenting:

I do not agree with the majority opinion in this case for all of the reasons set forth below.

The facts show that the plaintiffs, Lewis F. Jeffers and wife, Minnie B. Jeffers, were stockholders in Hayes International Corporation (Hayes), and that Hayes and City Investing Company (City) wished to merge by way of a reorganization whereby the plaintiffs would be issued stock in City in exchange for their stock in Hayes. In order to determine the tax consequences of the proposed merger, tax counsel for Hayes asked the Internal Revenue Service for a

---

30. *See also* Treas.Reg. § 1.483–1(b)(5) (1966).

31. The regulations specifically include stock within the meaning of the term "payments." Treas.Reg. § 1.483–1(b)(1) (1966).

32. *See* § 483(d).

33. It should be noted that our decision in this case is compatible with the Tax Court's deci-

sion in *Solomon v. Commissioner*, 67 T.C. 379 (filed Dec. 6, 1976), which held that § 483 is applicable to deferred payments of stock received in a qualifying § 368(a)(1)(B) corporate reorganization.

34. *See also* Treas.Reg. § 1.483–1(e)(1) (1966).

ruling by letter dated October 12, 1966. The ruling requested was in pertinent part as follows:

(d) No gain or loss will be recognized to the stockholders of Hayes upon the exchange by them following the merger of their Hayes common stock for City common stock, including City common stock issuable by reason of the certificates of contingent interest. Sections 368(a)(1)(A) and 354, I.R.C.

(e) No gain or loss will be recognized upon receipt of the shares of City common stock issuable by reason of the certificates of contingent interest. Sections 368(a)(1)(A) and Section 354, I.R.C.

(f) The certificates of contingent interest to be received upon the merger by the stockholders of Hayes will not constitute the receipt of additional consideration within the meaning of Section 356, I.R.C.

The IRS issued the requested ruling by letter of December 15, 1966, which stated, among other things, that the merger would constitute a reorganization within the meaning of Section 368(a)(1)(A) of the Internal Revenue Code of 1954. As to the tax consequences of the merger to the Hayes stockholders (which included the plaintiffs), the ruling stated in pertinent part:

(4) In accordance with the provisions of section 354(a)(1), no gain or loss will be recognized to the shareholders of Hayes on the receipt by them of shares of City stock (including City stock issuable by reason of the certificates of contingent interest and any fractional share interests to which they may be entitled) in exchange for their shares of Hayes stock. The certificates of contingent interest received by the shareholders of Hayes will not constitute the receipt of additional consideration within the meaning of section 356.

(5) The basis of the stock of City received by the shareholders of Hayes (including City stock issuable by reason of the certificates of contingent interest and any fractional share interests to which they may be entitled) will be the same as the basis of the stock surrendered therefor (section 358(a)(1)). Until the additional shares are issued by reason of the certificates of contingent interest, the basis will be determined as though the maximum number of shares issuable were received.

\* \* \* \* \* \*

No opinion is expressed as to the tax treatment of the transaction under the provisions of any of the other sections of the Code and Regulations which may also be applicable thereto or to the tax treatment of any conditions existing at the time of, or effects resulting from, the transaction which are not specifically covered by the above rulings.

Relying on the ruling, tax counsel advised the Hayes shareholders that the merger and reorganization would be tax exempt and that there would be no taxable gain or loss to them upon receipt of shares of City stock, including stock to be issued by reason of the certificates of contingent interest. Based upon this advice from tax counsel and relying on the IRS ruling, the stockholders of both corporations approved the merger and reorganization and it was consummated in March 1967.

Prior to the completion of the merger, Hayes and City could not agree on the value of Hayes' assets and business. To take care of this problem, it was agreed that in addition to the City stock each shareholder of Hayes would receive (²⁄₇ of one share of City stock for each share of Hayes' stock) the Hayes stockholders would receive from City nontransferable certificates of contingent interest which would entitle them to a number of units of City stock equal to the number of Hayes they had surrendered, provided that the earnings of Hayes, operating as a subsidiary of City, for a five-year period totaled $7,500,000. During the year 1971, the earnings of Hayes reached that amount. Accordingly, the plaintiffs, who had surrendered 81,035 shares in 1957 for 23,151 shares of City plus a certificate of contingent interest for 81,-035 units, received 28,079 shares of City in

exchange for their certificates of contingent interest. The IRS contends that these additional shares constituted a "deferred payment" and were taxable and assessed a deficiency against the plaintiffs in the sum of $25,995. Plaintiffs sue to recover this assessment plus interest. I do not agree that the additional shares exchanged for the certificates of contingent interest was a deferred payment.

## I

### The Deferred Payment Issue

To sustain its position, the defendant relies on Section 483 of the Internal Revenue Code of 1954, which provides in pertinent part as follows:

§ 483. Interest on certain deferred payments.

(a) Amount constituting interest.—

For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

\* \* \* \* \* \*

(c) Payments to which section applies.—

(1) In general.—

Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange and

(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.

\* \* \* \* \* \*

(d) Payments that are indefinite as to time, liability, or amount.—

In the case of a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange, this section shall be separately applied to such portion as if it (and any amount of interest attributable to such portion) were the only payments due under the contract; and such determinations of liability, amount, and due date shall be made at the time payment of such portion is made. [26 U.S.C. § 483 (1964)]

The defendant also relies on that part of Treasury Regulations (Section 1.483–2(b)(3)) which provides:

\* \* \* [T]he provisions of section 483 apply to deferred payments of stock or securities by a corporation which is a party to a reorganization, notwithstanding that under section 354(a) no gain or loss is recognized on the transaction. \* \* \*

Defendant argues that Section 483 and the above Treasury Regulation apply if there is (1) a sale or exchange of property, (2) a payment due more than one year from the date of sale or exchange, and (3) there is no provision for interest. It contends that these requirements have been met in this case. I do not agree.

When the reorganization took place, there was a continuation of interest of the plaintiffs in the reorganized company. The certificates of contingent interest were the same as stock and the plaintiffs owned the certificates and the stock which they represented from the day of the merger. The revenue ruling shows this to be true when it stated in pertinent part:

(4) \* \* \* *[N]o gain or loss· will be recognized* to the shareholders of Hayes on the receipt by them of shares of City stock (*including City stock issuable by reason of the certificates of contingent interest* and any ' fractional share interests to which

they may be entitled) in exchange for their shares of Hayes stock. *The certificates of contingent interest received by the shareholders of Hayes will not constitute the receipt of additional consideration within the meaning of section 356.*

(5) * * * *Until the additional shares are issued by reason of the certificates of contingent interest, the basis will be determined as though the maximum number of shares issuable were received.* [Emphasis supplied.]

These provisions of the ruling show the character of the transaction to be that the Hayes stockholders were the owners of the stock issuable by reason of the certificates of contingent interest from the date of the merger. Otherwise the certificates of contingent interest would have been nothing but scraps of paper with no value whatever. There would have been no reason for the ruling to state that the receipt of the certificates "would not constitute the receipt of additional consideration" if they were not the same as stock. Consequently, when the shares of stock were substituted for the certificates of contingent interest, there was no sale or exchange of property—only the substitution of one piece of paper for another, each being evidence of ownership of the same stock as of the date of the merger.

When this substitution occurred, there was no payment made. The transaction was merely the delivery to the Hayes stockholders of stock they had owned since the reorganization was completed.

Of course, there was no provision for interest, because the certificates were not indebtednesses nor obligations for any kind of payment, and there was no occasion to provide for interest.

Therefore, it appears that that the requirements have not been met which defendant says are necessary for the application of Section 483 and the cited Treasury Regulation.

The case of *Carlberg v. United States,* 281 F.2d 507 (8th Cir. 1960), directly supports the foregoing analysis that certificates of contingent interest are "stock" in a corporate reorganization and are not taxable as "other property" when the additional shares are exchanged for the certificates. In that case a Maryland and a Missouri corporation merged with a corporation of New York known as International. At the time of the merger and reorganization, the Missouri corporation had certain unresolved liabilities. To take care of this uncertainty, when the shares of stock were exchanged, the stockholders of the Maryland and Missouri corporations were issued certificates of contingent interest for additional shares, depending on the resolution of the liabilities of the Missouri corporation. The issue in the case was whether the certificates of contingent interest qualified as "stock" within the meaning of Section 354(a)(1), or, instead, as "other property," within the meaning of Section 356(a)(1). The court in speaking through Judge Blackmun (now Justice Blackmun of the Supreme Court) held that the certificates of contingent interest were stock, saying:

We emphasize also that, however one may choose to describe it, the Certificate of Contingent Interest represented only International common and nothing else. *What the holder possessed was either stock or it was nothing.* The number of shares to be forthcoming, it is true, was not determined with exactitude at the time of the merger but that fact does not change the character of the interest. And to argue that because it traded independently of International's whole shares proves that it is something apart from the stock is, we think, an unrealistic appraisal of the significance of market action. [Emphasis supplied.] [*Id.* at 519.]

Continuing, the court there said:

Substance. It has often been said in tax arguments, and occasionally decided, see *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; *Commissioner of Internal Revenue v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981; *Kanawha Gas & Utilities Co. v. Commissioner of Internal Revenue,* 5 Cir., 214 F.2d 685, 691, that substance must

prevail over form. If this observation has any independent legal force, or merit in the determination of tax causes, it compels a conclusion that the substance of the Certificates equates only with stock of International. The rule of substance over form, therefore, this time operates in the taxpayer's favor.

For these reasons of purpose, practicality, precedent and substance, *we hold that the property interest represented by the Certificates of Contingent Interest in this reorganization is "stock" within the meaning of § 354(a)(1) rather than "other property" within the meaning of § 356(a)(1) or "boot" and that the Certificates' receipt by the taxpayer in 1956 did not result in recognized income to her.* [Emphasis supplied.] [*Id.* at 519–20.]

The following statement by the court in the *Carlberg* case is particularly applicable to the instant case:

> * * * Assuming, as we must in the light of the government's concession, that the necessary "business exigency" and a "readjustment of continuing interest in property under a modified corporate form" are both present here with respect to the whole and fractional shares of International common, we fail to see why, in line with these expressed purposes, the same conclusion does not follow with respect to the Certificates of Contingent Interest. *Certainly the Certificates here provide "continuity of interest" in the surviving corporation just as do the taxpayer's whole shares and fractional share. The Certificates can produce nothing other than stock and nothing other than a continuity of interest. The Certificates therefore fit the expressed basic purpose of the tax free provisions of the reorganization sections.* [Emphasis supplied.] [*Id.* at 518–19.]

The Tax Court followed the *Carlberg* case in *James C. Hamrick*, 43 T.C. 21 (1964), when it held:

> The respondent concedes that the stock issued in 1957 was received in exchange for the transfer of property. The contract right to receive additional stock was also a part of the consideration for the transfer. The right, as in *Carlberg*, can produce nothing other than stock to the petitioner. While the exact number of shares is not specified, what the petitioner can receive is nothing other than stock. Applying the rule of substance over form, we must conclude that the substance of the contract provides for only a stockholder's interest. It does not represent current gain, but additional equity ownership. [*Id.* at 33.]

*See also* Rev.Rul. 66–112, 1966–1, C.B. 68, where the IRS considered the contractual right to stock to be the same as the stock itself. Such a contract right represents "additional equity ownership," as held by the Tax Court in *Hamrick, supra. See also* Rev.Rul. 67–90, 1967–1, C.B. 79. The certificates of contingent interest in the instant case had the same effect (additional equity ownership) as of the date of the reorganization, and the later change in the indicia of such ownership (substitution of stock certificates for certificates of contingent interest) was not a deferred payment that calls for the application of Section 483 nor of the regulation issued thereunder. Neither the statue nor the regulation is applicable unless there is a deferred payment, and such payment does not exist in the case before us.

In Rev.Rul. 70–120, 1970–1 C.B. 124 the IRS ruled that in a reorganization situation where additional shares of stock were placed in escrow and were to be delivered to the taxpayer when certain specified earnings were met, the additional shares were deemed to have been transferred to the taxpayer on the effective date of the reorganization, and, accordingly, Section 483 did not apply. There is no practical difference between that situation and the case before us. In our case, the additional shares were held by City until certain earnings were met, whereas, in the Rev.Rul. 70–120 the additional shares were held in escrow by a bank until certain earnings were met. Section 483 does not apply to either situation, as the shares of stock are deemed to have been transferred to the taxpayer on the date the merger took place.

Defendant contends that the recent decision of the Tax Court in *Sidney R. Solomon,* 67 T.C. 379 (Dec. 6, 1976) is applicable here. I think the case is distinguishable on several grounds. In that case the judge (the case was decided by a single judge) found that the delivery of the additional stock subsequent to the date of a merger was a deferred payment and taxable under Section 483. However, in that case the taxpayer conceded that the delivery of the stock was a deferred payment and did not contend otherwise. Consequently, the judge did not analyze or come to grips with that issue, which is the controlling issue in the instant case.

Furthermore, there was no IRS ruling in that case as there is in our case. The ruling in the present case confirms the fact that the certificates of contingent interest were not "other property."

Also, the judge's decision in the *Solomon* case appears to be contrary to the decision of his own court in *Hamrick, supra,* as well as contrary to the decision of the Eighth Circuit Court in *Carlberg, supra.*

There are other distinguishable facts in *Solomon* as compared to our case, but I will not belabor the point.

Section 1223 of the Code, when considered with the ruling in the present case, definitely supports the position of the plaintiffs as to the length of time they held the City stock issued to them by reason of the certificates of contingent interest. Section 1223(1) provides as follows:

§ 1223. Holding period of property.

For purposes of this subtitle—

(1) *In determining the period for which the taxpayer has held property received in an exchange, there shall be included the period for which he held the property exchanged if, under this chapter, the property has,* for the purpose of determining gain or loss from a sale or exchange, *the same basis in whole or in part in his hands as the property exchanged,* and, in the case of such exchanges after March 1, 1954, the property exchanged at the time of such exchange was a capital asset as defined in section 1221 or property described in section 1231. * * * [Emphasis supplied.] [26 U.S.C. § 1223(1) (1970).]

Since the IRS has ruled in this case that the basis of the Hayes stock surrendered is the same as the basis of the City stock received —"including City stock issuable by reason of the certificates of contingent interest"— the taxpayer in this case, pursuant to Section 1223(1), is considered to have held the City shares in issue from the date he originally acquired the Hayes stock surrendered. Consequently, the shares issued to plaintiffs by reason of the certificates of contingent interest did not constitute a deferred payment, but were shares they owned and held from the time they originally acquired the Hayes stock which they surrendered to City. Therefore, Section 483 does not apply.

II

*Section 483, Being a General Code Provision That Imposes a Tax, Cannot Override or Take Precedence Over the Specific Code Provisions of Sections 368(a)(1)(A), 354(a)(1), 358(a)(1) and 1223(1) Providing for Tax-Free Corporate Reorganizations.*

The Code provides that shareholders in a qualifying corporate reorganization (under Section 368(a)(1)(A)) recognize no gain or loss (Section 354(a)(1)), and have a carryover basis (Section 358(a)(1)), and a carryover holding period (Section 1223(1)), with respect to the stock issued to them in such qualifying reorganization, because that stock represents a readjustment of continuing interest in property under modified corporate forms (Treasury Regulation Section 1.368–1(b)). The effect of these provisions in the present case is that there will be no adverse tax consequences to the Hayes stockholders (the plaintiffs) with respect to the receipt of the additional shares of City stock. The position of the defendant is that notwithstanding the provisions of these *specific* statutes, Section 483, (a *general* statute), should override them and impose a tax on the Hayes stockholders. This is contrary

to the above specific statutory provisions relating to tax-free corporate reorganizations. Furthermore, it violates the well-established rule that "a specific statute controls over a general one without regard to priority of enactment." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). The specific statutory provisions applicable to corporate reorganizations had existed for more than 45 years before Section 483 was enacted.[1]

The argument defendant makes in the instant case is contrary to the decision of the court in *Fox v. United States*, 510 F.2d 1330 (3d Cir. 1975), aff'g, 74–1 USTC ¶ 9358 (E.D.Pa.1974) and contrary to the position the defendant took in that case. There a husband and wife entered into a divorce settlement whereby the husband was to pay the wife $1,000,000, of which $300,000 was to be paid when judgment was entered and the remainder was to be paid in quarterly installments over a period of 9½ years. The husband claimed that because of Section 483 of the Code, a part of each payment should be considered as interest which he could deduct from his income tax. The court rejected the husband's claim, citing the legislative history of Section 483 in support of its conclusion that this provision was intended to have only a limited application, saying:

> * * * [A]n examination of this history discloses that the House and the Senate agreed the purpose of the bill was to eliminate "undesirable" "Manipulation of the tax laws" by sellers and purchasers of capital assets under installment sales agreements which did not specifically provide for interest. * * * [Footnote omitted.] [*Id.* at 1334.]

In that case, the court held further that Section 483 could not be applied to allow interest in an alimony payment because it was governed for tax purposes by the more *specific* provisions of 26 U.S.C. §§ 71, 215 [*Id.* at 1332]. This was exactly the position that defendant took in the *Fox* case which

was sustained by the court. For instance, in the brief filed by defendant in the district court the defendant stated:

> It is a canon of statutory construction that when the legislature has enacted specific statutes in an area, they should take precedence over more general provisions unless there is a clear indication to the contrary. *Monte Vista Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126, 129 (C.A. 9, 1967), cert. denied, 390 U.S. 950 [88 S.Ct. 1041, 19 L.Ed.2d 114] (1968); *Proutt's Estate v. Commissioner*, 125 F.2d 591, 595 (C.A. 6, 1942), citing *Helvering v. LeGirerse [Gierse]*, 312 U.S. 531, 538 [61 S.Ct. 646, 85 L.Ed. 996] (1941).

Of course, that was a correct statement of the law and should be followed here. It should be pointed out that the defendant takes a directly opposite position in the instant case. The defendant should not be allowed to have it both ways.

In the present case, we should hold that Congress provided for tax-free corporate reorganizations by *specific* statutes. Section 483 of the Code is a *general* statute enacted to prevent a seller of capital assets from including interest as capital gain in a deferred payment in order to increase his income tax deductions. The statute was never intended to apply to a situation such as we have here. The *general* provision of Section 483 must give way to the *specific* statutes cited above providing for tax-free corporate reorganizations in line with the long and well-established rule set forth above.

It is well known that when Congress intends for a general provision of the Code to take precedence over other sections of the Code, it knows how to do so. For instance, when it enacted Section 1250, which was in the same revenue bill as Section 483, a special provision was included which stated: "This section shall apply notwithstanding any other provision of this subtitle." Similar language is found in Section 1245(d)

---

1. Section 483 was enacted February 26, 1964, Pub.L. 88–272, Section 224(a). Statutes governing tax treatment of corporate reorganiza- tions was included in the Revenue Act of 1918, Pub.L. 65–254, Section 202(b).

which was enacted two years before Section 483. If Congress had intended that Section 483 should take precedence over the tax-free corporate reorganization statutes and impose a tax on corporate mergers, such as we have here, it would have so provided. In the absence of such a provision, it is clear that Congress did not intend for Section 483 to override the nonrecognition tax-free provisions.

I would deny defendant's motion for partial summary judgment and its counterclaim, and would allow plaintiffs' cross-motion for partial summary judgment, and enter judgment for the plaintiffs for the refund of income taxes paid in the sum of $25,995 for the calendar year 1971, plus interest thereon, and remand the case to the trial judge to determine the amount due in proceedings under Rule 131(c).