MARJORIE J. GAMMILL, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9578-75, 9602-75, 9955-75.     Filed February 28, 1980.

---

[1]Cases of the following petitioners are consolidated herewith: John S. Gammill, docket No. 9602-75; and John S. Gammill and Betty Milliren, docket No. 9955-75.

*George F. Saunders,* for the petitioner in docket No. 9578–75.

*Gene A. Castleberry,* for the petitioners in docket Nos. 9602–75, 9955–75.

*D. Michael Adcock,* for the respondent.

WILES, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Taxpayer | Docket No. | Year | Deficiency |
|---|---|---|---|
| Marjorie J. Gammill | 9578–75 | 1971 | $4,351.00 |
| | | 1972 | 4,458.20 |
| | | 1973 | 4,348.00 |
| John S. Gammill | 9602–75 | 1971 | 5,211.00 |
| | | 1972 | 4,205.98 |
| John S. Gammill and Betty Milliren | 9955–75 | 1973 | 6,253.00 |

The issues for decision are: (1) Whether payments received by Marjorie J. Gammill from her former husband, John S. Gammill, are includable in her gross income under section 71(a)(1)[2] and, therefore, are deductible by John S. Gammill under section 215(a); and (2) whether John S. Gammill is entitled to deductions for imputed interest under section 483 if the payments he made to Marjorie J. Gammill are determined to be in satisfaction of a property settlement. As to both issues, respondent is a mere stakeholder in this case.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Marjorie J. Gammill and John S. Gammill resided in Oklahoma City, Okla., when they filed their 1971, 1972, and 1973 Federal income tax returns with the Internal Revenue Service Center, Austin, Tex., and when they filed their petitions in this case.[3]

Marjorie J. and John S. Gammill were married on February 23, 1946, and two children were born of the marriage. In April 1970, Marjorie commenced an action in the District Court for Oklahoma County, State of Oklahoma, seeking a divorce from

---

[2]Statutory references are to the Internal Revenue Code of 1954, as amended.

[3]Betty Milliren is a party to the petition relating to taxable year 1973 solely because she joined in filing John S. Gammill's 1973 tax return.

John, the custody of their minor son, an equitable division of the property, and an alimony award. On April 21, 1970, the court ordered John to pay $1,000 a month for Marjorie's living expenses pending the divorce proceedings. On May 8, 1970, the court reduced the temporary support from $1,000 to $500 and ordered John to pay the utility bills and the mortgage on the family residence in which Marjorie continued to reside. On November 5, 1970, the court granted Marjorie a divorce from John and filed a "Decree of Divorce and Journal Entry of Judgment" (hereinafter divorce decree).

Neither John nor Marjorie had any separate property of substantial value at the time of their marriage, and the record does not indicate that either party had any separate property at the time of their divorce. Therefore, all the assets they had at the time of their divorce were acquired jointly during the course of their marriage. John owned 942,294 of the 2,508,176 outstanding shares of stock of Reserve National Insurance Co. (hereinafter Reserve National), a corporation he formed in 1956. The office building occupied by Reserve National was also titled in John's name. Marjorie, though never having made any payments on the mortgage on the family residence, held a legal interest therein which was quitclaimed to John upon divorce. No other property was legally held in Marjorie's name at the time of the divorce.

Marjorie's contribution toward the marriage was essentially that of housewife and mother. She never finished high school and had not been employed outside the home while married to John. Furthermore, her contribution to the success of Reserve National was minimal.

During the divorce proceedings, the parties neither agreed to the value of the property acquired during their marriage, nor agreed that either would get a certain percentage of the property. Marjorie believed, however, that she was entitled to one-half the property the couple acquired during the course of their marriage. Her attorney valued the estate to be divided at $811,261, broken down as follows:

| | |
|---|---|
| Reserve National stock | $518,261.70 |
| House and furniture | 100,000.00 |
| Republic Brokerage | 50,000.00 |

| | |
|---|---:|
| Office building | 105,000.00 |
| Stocks, bonds, mutual funds | 16,000.00 |
| Automobile | 2,000.00 |
| Art objects | 20,000.00 |
| | 811,261.70 |

In contemplation of the divorce, Marjorie and John executed an instrument entitled "Property Settlement Agreement" (hereinafter agreement). Marjorie and John entered into the agreement with the advice of their attorneys. With respect to the $250,000 money judgment against John, the agreement provided as follows:

6. Second Party [John] is to pay to First Party [Marjorie], *by way of further division of property* and *not as alimony*, the sum of $250,000 which shall be incorporated in the decree as a judgment. [Emphasis added.]

The agreement was approved and made a part of the divorce decree by order of the District Court, which found that it fully and fairly divided the marital estate. The portions of the divorce decree which incorporated the paragraph of the agreement pertaining to the $250,000 money judgment at issue in this case read as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement agreement entered into by and between the parties on this date is hereby approved and made a part of this Decree, and that *as a part of* the property and assets set over to the plaintiff as provided by said Contract, that plaintiff is granted judgment against the defendant in the sum of $250,000.00 the same to be payable at the defendant's option, *without interest,* in equal monthly installments of $1,041.47 for a period of 240 months with the right of pre-payment of same. That said judgment shall be secured by a judgment lien against 300,000 shares of stock of the defendant in Reserve National Insurance Company, the same representing a portion only of the stock in said insurance company, owned by the defendant.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event that defendant should die or become and remain in default upon the payments due on this judgment for more than 30 days, then this entire judgment shall become due and payable in full, and in addition to the collateral provided for above, that plaintiff shall have all other remedies provided by law against the defendant or his estate, successors or assigns, for collection of said judgment.
[Emphasis added.]

Both the agreement and the divorce decree provided that the judgment lien on John's Reserve National stock was to be released annually as to 15,000 shares of such stock unless he

defaulted in the payment of the installments due during the preceding year or as to a proportionate number of shares of such stock if he prepaid any part of the judgment.

In addition to the $250,000 money judgment payable, at John's option, by lump sum or in installments over a maximum of 20 years, Marjorie received the following assets valued by her attorney as follows:

| | |
|---|---:|
| Office buildings | $105,000 |
| One-half of art objects | 10,000 |
| Automobile | 2,000 |
| Cash | 50,000 |
| | 167,000 |

The office building transferred to Marjorie was subject to a lease with Reserve National. The lease had 5 years remaining at a monthly rent of $1,600. Under the lease, Reserve National had to maintain the building in good repair, pay the utilities, and carry liability insurance on the building. The total value of the money judgment and the assets Marjorie received under the agreement was $417,000, or approximately one-half the entire estate as valued by her attorney.

Under the agreement, John received the family residence, subject to a mortgage, along with the furnishings therein and "all of those assets accumulated since the date of the marriage save and except those specifically * * * set aside to" Marjorie. As such, John retained ownership of the 942,294 shares of Reserve National stock.

## OPINION

The first issue for decision is whether payments received by Marjorie from her former husband, John, are periodic payments in the nature of support or part of a property settlement. If the payments are determined to be periodic in the nature of support, they are includable in Marjorie's gross income under section 71(a)(1) and deductible by John under section 215(a). On the other hand, if the payments are determined to be part of a property settlement, there will be no tax consequences to either party under sections 71 and 215.

Marjorie maintains that the agreement she and John entered, as incorporated in the divorce decree, clearly shows that the $250,000 money judgment was part of the property settlement

and not periodic payments in the nature of support. She claims the money judgment entered in the divorce decree was in satisfaction of her right to one-half the property acquired during the course of their marriage. John maintains that since Marjorie had no independent means of support, he intended the monthly payments made in satisfaction of the money judgment to be for her support. He claims that under Oklahoma law, Marjorie had no vested rights in the property acquired during their marriage in that she made a minimal contribution to the acquisition of such property, and, therefore, was not entitled to one-half the marital estate.

For reasons set out below, we find, on the basis of this record, that the $250,000 money judgment entered in the divorce decree was part of the property settlement between Marjorie and John. Accordingly, Marjorie is not required to include the payments she received from John in her gross income under section 71(a)(1) and John is not entitled to deduct the amounts he paid under section 215(a).

As relevant to this case, section 71(a) provides that if a wife is divorced from her husband under a decree of divorce, the wife's gross income includes periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is incurred by the husband under the decree incident to such divorce. Section 215(a) permits a deduction to the husband for payments which are includable in the gross income of his wife under section 71. Section 71(a), however, applies only to payments made in recognition of the general obligation to support which is made specific by the decree. Sec. 1.71–1(b)(4), Income Tax Regs. Payments which are part of a property settlement are capital in nature and, therefore, are not subject to the provisions of section 71. *Thompson v. Commissioner*, 50 T.C. 522, 525 (1968); *Price v. Commissioner*, 49 T.C. 676 (1968).

In determining whether payments are periodic and in the nature of support or part of a property settlement, labels assigned to the payments by the parties in their agreement or by the court in the divorce decree are not conclusive. *Thompson v. Commissioner, supra; Bardwell v. Commissioner*, 38 T.C. 84, 89–90 (1962), affd. 318 F.2d 786 (10th Cir. 1963). The determination rests upon the surrounding facts and circumstances. *Jackson v.*

*Commissioner*, 54 T.C. 125, 130 (1970); *Newbury v. Commissioner*, 46 T.C. 690, 694 (1966).

Marjorie argues that the language in both the agreement and the divorce decree makes it clear that the money judgment was part of the property settlement rather than in the nature of support. We agree. The agreement provided that John was to pay her "by way of further division of property and not as alimony, the sum of $250,000 which shall be incorporated in the decree as a judgment." The provision in the divorce decree relating to the money judgment at issue was changed from "in addition to the property and assets set over to the plaintiff" (Marjorie) to "as a part of the property and assets set over to the plaintiff" (Marjorie). The initials of John, Marjorie, and the presiding judge were alongside this change. Although, as noted above, labels assigned by the parties in instruments are not conclusive, we believe that, in light of the surrounding facts and circumstances discussed below, the language used by John and Marjorie is sufficiently clear to find that the judgment was part of the property settlement. Moreover, John's initials alongside the change in the divorce decree, whether by his own hand or that of his attorney, is convincing proof that he knew or should have known that the money judgment was part of the property settlement and not in the nature of support.

Our finding is further supported by the Oklahoma statute pertaining to support and to the division of property which was applicable at the time of Marjorie and John's divorce.[4] Under this statute, the court could have designated the payments made in satisfaction of the money judgment as support, which it did not do, rather than as part of the property settlement. Moreover, if the payments were periodic or in the nature of support, the

---

[4]The statute, in part, provides:

§ 1289. Alimony payments—Termination—Payments pertaining to division of property

\*    \*    \*    \*    \*    \*    \*

(B) In any divorce decree entered after December 31, 1967, which provides for periodic alimony payments, *the Court, at the time of entering the original decree, only, may designate all or a portion of each such payment as support, and all or a portion of such payment as a payment pertaining to a division of property.* Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable. \* \* \* *The Court shall also provide in the divorce decree that any such support payments shall terminate after remarriage of the recipient* \* \* \* [1965 Okla. Sess. Laws, ch. 344, sec. 1. Amended by 1967 Okla. Sess. Laws, ch. 328, sec. 1; 1968 Okla. Sess. Laws, ch. 161, sec. 1, emerg. effective Apr. 11, 1968. Emphasis added.]

statute provides that the court should have made provision for their termination upon Marjorie's remarriage. The payments were not so conditioned in the divorce decree, and, in addition, John testified that he believed the payments would continue even if Marjorie died. Furthermore, not only was the entire judgment due and payable in full if John died or failed to make any payment for more than 30 days, but Marjorie was provided with all other remedies at law against John, his estate, successors, or assigns for collection of said judgment.

John's argument that since Marjorie had no independent means of support, he intended the money judgment to provide for her support is unpersuasive. John noted that Marjorie had neither worked outside the home for nearly 25 years nor did she have any marketable skills for securing outside employment. John, however, ignores the fact that Marjorie was to receive rent of $1,600 per month from the office building transferred to her as part of the property settlement. This rent totaled $19,200 per year. After reducing this total by the expenses for maintaining the building which Reserve National was not liable for under the lease, her income was approximately the same as John's annual salary of between $15,000 and $18,000, exclusive of outside income. By virtue of owning the office building, Marjorie was essentially self-supporting. Moreover, despite Marjorie's initial request for alimony in her petition for divorce, the record does not reflect any consideration by the parties prior to the divorce of the extent of Marjorie's need for support or John's ability to pay such support.

John's argument that Marjorie had not acquired any right in the property acquired during their marriage is also without merit. Under Oklahoma law, the wife's right to property upon divorce is set forth in Okla. Stat. Ann. tit. 12, sec. 1278 (1967), which, as pertinent, provides:

Sec. 1278. Disposition of property—Restoration of wife's maiden name—Alimony

\*     \*     \*     \*     \*     \*     \*

*As to such property,* whether real or personal, as shall have been *acquired by the parties jointly* during their marriage, *whether the title thereto be in either or both of said parties,* the court shall make such division between the parties respectively as may appear *just and reasonable,* by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. \* \* \* R.L. 1910, § 4969. [Emphasis added.]

In addressing the wife's property interests, the Supreme Court of Oklahoma has stated that the nature of a wife's interest in jointly acquired property, property acquired by the joint effort of the spouses during marriage, "is similar in conception to community property of community property states, and is regarded as held by a species of common ownership." *Collins v. Oklahoma Tax Commission*, 446 P.2d 290, 295 (Okla. 1968). Upon divorce, the wife's interest in jointly acquired property is vested, regardless of who holds title. *Davis v. Davis*, 61 Okla. 1275, 161 P. 190, 193 (1916). Since all the property held by John and Marjorie at the time of divorce was jointly acquired property, and Marjorie had a vested interest in all such property, her rights in the property were only subject to a statutory "just and reasonable" division by the trial judge presiding at the divorce action.

John's contention that Marjorie is not entitled to one-half the property acquired during their marriage because she expended minimal effort in making Reserve National successful, and therefore such property was not acquired jointly, is not valid. Although Marjorie's efforts in making Reserve National successful appear to be minimal, she testified that John wanted her to stay at home and care for the children. The efforts of the wife need not be outside the home for her contribution to be such as to cause property acquired during marriage to be jointly acquired property. *Roberts v. Roberts*, 357 P.2d 980 (Okla. 1960); *Funk v. Funk*, 319 P.2d 599 (Okla. 1957), as cited in *Collins v. Commissioner*, 46 T.C. 461, 471 (1966). By providing for the $250,000 money judgment against John in the divorce decree, the court made the statutory just and reasonable division of property consistent with Marjorie's contribution to the marriage as a wife and good mother for over 24 years.

The fact that the money judgment was secured by John's stock in Reserve National, which judgment lien would be released annually on 15,000 shares if the payments for the year were timely made, lends further support to the position that the $250,000 money judgment was part of the property settlement. The record reveals that John was unable to pay Marjorie $250,000 at the time of divorce due to a lack of cash. We believe that John agreed to the money judgment in order to retain ownership of all of his Reserve National stock.

The second issue for decision is based on John's claim that if

the money judgment is determined to be part of the property settlement, he is entitled to deduct that portion of each payment representing imputed interest under section 483.[5] In order for John to be so entitled, not only must there be a "contract for the sale or exchange of property," but section 483 must be found applicable to property settlements incident to divorce. Since we find that section 483 is not applicable to property settlements incident to divorce, we need not determine whether the property settlement agreement John and Marjorie entered into constituted a contract for the sale or exchange of property.

Respondent relies on *Fox v. United States*, 510 F.2d 1330 (3d Cir. 1975),[6] for his contention that John is not entitled to such deductions.[7] In *Fox*, the taxpayer and his former wife entered a written agreement for the division of property incident to their divorce and such agreement provided that the taxpayer pay his former wife $1 million over a period of 9½ years. The agreement further provided that the deferred installment payments were to be made without interest. The Third Circuit held that the taxpayer was not entitled to deductions for imputed interest because section 215 limits the deductions a husband may claim on payments made under section 71, and section 483 was never intended to apply to property settlements incident to divorce. Although the court in *Fox* did not specifically find whether the payments the taxpayer made were periodic payments in the nature of support (alimony), part of a property settlement, or both, we find persuasive its reasoning that section 483 was never intended to apply to property settlements incident to divorce.

Section 483 was enacted in 1964 to eliminate undesirable manipulation of the tax laws by sellers and purchasers of capital

---

[5]Sec. 483, in part provides:

SEC. 483. INTEREST ON CERTAIN DEFERRED PAYMENTS.

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the *sale or exchange of property* there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract. [Emphasis added.]

[6]Rev. Rul. 76–146, 1976–1 C.B. 144, adopted the *Fox* rationale that sec. 483 does not apply to property settlements incident to divorce.

[7]John cites the case of *Gerlach v. United States*, 201 Ct. Cl. 884 (1973), as support for his position that he is entitled to deductions for imputed interest. *Gerlach* did allow the taxpayer a deduction for imputed interest on installment payments to his former wife which payments were found to be part of the property settlement incident to their divorce. In that case, however, the Government conceded the applicability of sec. 483 so the court did not consider the issue.

assets under installment sales agreements which did not specifically provide .for interest. The legislative history reveals the general reason for the section as follows:

Your committee agrees with the House that there is no reason for not reporting amounts as interest income merely because the seller and purchaser did not specifically provide for interest payments. This treats taxpayers differently in what are essentially the same circumstances merely on the grounds of the names assigned to the payments. In the case of depreciable property this may convert what is in reality ordinary interest income into capital gain to the seller. At the same time the purchaser can still recoup the amount as a deduction against ordinary income through depreciation deductions. Even where the property involved is a nondepreciable capital asset, the difference in tax bracket of the seller and buyer may make a distortion of the treatment of the payments advantageous from a tax standpoint. The House and your committee believe that manipulation of the tax laws in such a manner is undesirable and that corrective action is needed. [S. Rept. 830, to accompany H.R. 8363, 88th Cong., 2d Sess. (1964), 1964 U.S. Code Cong. & Adm. News 1775.]

The court in *Fox* properly noted that:

as a practical observation, the application of section 483 to an agreement like the instant one would not seem to further the conceptual framework of the statute. That is, it is highly unlikely that, in negotiating the property settlement agreement, the husband "purchaser" party would tolerate augmentation of the cash "sales price" to reflect "unstated interest." [510 F.2d at 1335.]

Several cases have held that section 483 is applicable to deferred payments resulting from tax-free reorganizations. *Vorbleski v. Commissioner*, 589 F.2d 123 (3d Cir. 1978), affg. 68 T.C. 413 (1977); *Katkin v. Commissioner*, 570 F.2d 139 (6th Cir. 1978), affg. 67 T.C. 379 (1976); *Solomon v. Commissioner*, 570 F.2d 28 (2d Cir. 1977), affg. 67 T.C. 379 (1976); *Jeffers v. United States*, 214 Ct. Cl. 9, 556 F.2d 986 (1977); *Catterall v. Commissioner*, 68 T.C. 413 (1977). In each of those cases, however, the courts distinguish *Fox* implicitly recognizing that different considerations are involved in applying section 483 to property settlements incident to divorce. Moreover, this Court, in *Catterall v. Commissioner, supra* at 420–421, distinguished *Fox* by stating:

The Third Circuit concluded that the tax consequences of divorce-related payments are specifically controlled by sections 71 and 215 and not subject to section 483. *Fox* is clearly distinguishable from the facts of the instant case. Unlike sections 71 and 215 which are broadly couched in terms of the *gross income* of the wife, section 354 merely provides that no *gain* is recognized in

the case of certain reorganizations described in section 368. Gain, as computed under section 1001(a), is merely one category of gross income described in section 61. Interest, the type of income with which we are concerned, is separately listed in section 61(a)(4). Although gain on the exchange of property is generally the only type of income realized in a reorganization in which no "boot" is received, the language of the reorganization sections does not specifically prohibit the recognition of other types of income. Therefore, no conflict exists·between sections 483 and 354 and thus there is no basis for the application of the above-mentioned rule of statutory construction as in *Fox*.

One of the taxpayers in *Catterall v. Commissioner, supra*, took a separate appeal to the Third Circuit, and, again relying on the *Fox* rationale, argued that section 483 should not be applied to tax-free reorganizations. *Vorbleski v. Commissioner*, 589 F.2d 123 (3d Cir. 1978), affg. 68 T.C. 413 (1977). In rejecting this argument, the Third Circuit affirmed its position in *Fox* and distinguished its position in that opinion by indicating again that *Fox* stood for the narrow rule that "section 483 does not apply to a payment when Congress intended all of the tax consequences of that payment to be governed *exclusively* by another provision of the Code." (589 F.2d at 132.) The Court then concluded that the provisions applicable to tax-free reorganizations, unlike those applying to divorce, were not intended to determine all the tax consequences of corporate reorganizations.

Finally, we note that the agreement John and Marjorie entered, as incorporated by their divorce decree, specifically provided that the $250,000 money judgment was to be paid without interest. It is well recognized that parties to a divorce agreement may for tax purposes act as their best interests dictate. *Commissioner v. Lester*, 366 U.S. 299, 306 (1961). For these reasons, we must deny John's claim and hold for respondent on this issue.

To reflect the foregoing,

> *Decision will be entered for the petitioner in docket No. 9578–75.*

> *Decisions will be entered for the respondent in docket Nos. 9602–75 and 9955–75.*