CLARK W. THOMPSON, JR., and CHARLENE Q. THOMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROSALIE M. THOMPSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket Nos. 8208-79, 9219-79.
United States Tax Court
T.C. Memo 1983-732; 1983 Tax Ct. Memo LEXIS 56; 47 T.C.M. (CCH) 559; T.C.M. (RIA) 83732; December 8, 1983. Arthur M. Nathan,Jesse R. Pierce, for the petitioners in docket No. 8208-79. Allen B. Craig, III, for the petitioner in docket *57 No. 9219-79. Ana G. Cummings, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Taxpayer
Docket No.
Year
Deficiency
Clark W. and
Charlene Q. Thompson
8208-79
1975
$12,180.85
1976
12,895.08
1977
12,554.02
Rosalie M. Thompson
9219-79
1974
4,032.00
1975
9,588.40
1976
7,641.00
1977
4,742.00
The sole issue for decision is whether the payments received by Rosalie M. Thompson from her former husband, Clark W. Thompson, Jr., are includable in her gross income under section 71(a)(1) [1] and, therefore, are deductible by Clark W. Thompson, Jr., under section 215(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Clark W. Thompson, Jr. (hereinafter Clark) and Charlene Q. Thompson, husband and wife, and petitioner Rosalie M. Thompson (hereinafter Rosalie) resided in Houston, Texas, when they filed their petitions in this case. Petitioners, Clark W. *58 and Charlene Q. Thompson filed joint Federal income tax returns for the years 1975, 1976, and 1977 with the Internal Revenue Service Center in Austin, Texas. Petitioner Rosalie M. Thompson also filed Federal income tax returns for the years 1974, 1975, 1976, and 1977 with the Internal Revenue Service Center in Austin, Texas. Rosalie and Clark Thompson (hereinafter sometimes referred to as petitioners) were married on August 30, 1941. Prior to June 6, 1957, Clark's grandmother, Libbie Shearn Moody, died and he became a 1/16th income beneficiary in the Libbie Shearn Moody Trust, created by her will dated August 22, 1942 (hereinafter the trust). On June 6, 1957, Clark, pursuant to authorization from the District Court of Galveston, Texas, sold his life interest in the trust for $1,387,248.37. On that same day, Clark also received a $100,000 specific bequest under the will of W. L. Moody, Jr. (his grandfather). Clark, a former tax partner in a large public accounting firm, was careful to avoid the commingling of his inheritances with his and Rosalie's community property. In this regard, Clark and Rosalie maintained several bank accounts, including a joint account, Clark's separate *59 account called the Clark W. Thompson, Jr., Special (hereinafter the special account), and a separate account for Rosalie. Clark and Rosalie had no signatory authority over each others separate accounts. In order to keep his inheritance segregated from the community property, Clark deposited the monies he received on June 6, 1957, in his special account. Throughout the years in issue, Clark purchased stocks, bonds, and real estate in his name only with funds from his special account, although he deposited all dividends and interest derived from these stocks and bonds into their joint account. On or about September 18, 1973, Rosalie, with the assistance of counsel, commenced an action in the Domestic Relations Court for Harris County, State of Texas, seeking a divorce from Clark and a division of community and separate property. In addition, the divorce petition requested that Clark file an itemized and verified inventory of their community and separate assets with the court. Complying with this request, Clark executed and filed with the Harris County court an inventory dated December 27, 1973, which identified items as either community property, Rosalie's separate property, or *60 Clark's separate property. The inventory valued their community property at $586,608.15, Rosalie's separate property at $41,500, and Clark's separate property at $955,558.25. During the pendency of the divorce proceeding, Rosalie received an "allowance" of $2,000 per month from Clark. In order to assist the court in identifying the property in the marriage as either community or separate property, the court appointed Allen J. Daggett (now Judge Daggett) as a Master in Chancery. In an attempt to facilitate settlement of the divorce, the Master scheduled several meetings with Rosalie, Clark, and their respective attorneys. During these meetings neither Rosalie nor her attorney objected to the inventory or its characterization of items as either separate or community property. On August 1, 1974, Rosalie and Clark, with the advice and assistance of their respective attorneys and the Master in Chancery, entered into an "agreement incident to divorce" (hereinafter the agreement). The agreement stated in its preamble as follows: WHEREAS, in said cause Rosalie Meador Thompson sought an adjudication of her rights in and to the community property and estate of herself and Clark W. *61 Thompson, Jr., and a partition of the community estate; and WHEREAS, Rosalie Meador Thompson further sought an adjudication of Clark W. Thompson's marital support obligations to her; and WHEREAS, it is the desire of both the Petitioner and the Respondent to determine and settle all matters between them by mutual agreement, to make a partition of the community estate of their marriage, and to provide for Petitioner's support; and WHEREAS, Allen J. Daggett was appointed Master In chancery and heard evidence relating to the property owned by the parties and made his report and Property Settlement Agreement to the Court * * *. [Emphasis added.] The agreement generally provides that Rosalie would retain title to her separate property and would receive one-half of the community property, and that Clark would likewise retain title to his separate property and would receive one-half of the community property. The agreement also provides for support payments in Article IX which reads as follows: In addition to the property settlement herein provided and in recognition of Rosalie Meador Thompson's marital rights of support based upon the benefits she would have received *62 from a continuation of the marriage, Clark W. Thompson, Jr., shall pay to Rosalie Meador Thompson for the period of her life on the first (1st) day of each and every month [the sum of $2,000] * * *. Article IX further provides that the monthly payments would be reduced to $1,000 should Rosalie remarry, and that the obligation to make these payments survives Clark's death. Clark intended these payments to be support, taxable to Rosalie as income and deductible by him. On July 31, 1974, the Harris County court entered a decree of divorce. The agreement was approved and made part of the divorce decree by order of the court which read as follows: IT IS THEREFORE ORDERED that the community property agreement entered into by Petitioner and Respondent, as announced to the Court by the Master In Chancery, ALLEN J. DAGGETT, and further approved by each of the respective attorneys for the parties herein by and is hereby approved and incorporated into this decree by reference. The decree also states that "the court finds that the parties have accumulated a large amount of both community property and separate property belonging to the respondent, Clark W. Thompson, Jr., during *63 the marriage * * *." At no time during the divorce proceedings did Rosalie or her attorney object to the characterization of the property as either separate or community. Pursuant to the divorce decree, Rosalie retained title to her separate property which consisted of jewelry valued at $41,500. In satisfaction of her one-half interest in the community property valued at $586,608.15, Rosalie received the following items of personal property: Item
Value as Stated
in Inventory
Cash
$10,000.00
Jewelry
142,705.00
Common stock -
Santa Fe
15,300.00
Exxon
28,977.00
Continental Can
18,140.62
International Business Machines
32,250.00
Delta Airlines
5,050.00
1972 Lincoln automobile
5,000.00
Houston residence
29,000.00
Furnishings, paintings
15,000.00
Total Value
$301,422.62
In addition to the property settlement, Rosalie continued to receive from Clark the sum of $2,000 per month each month thereafter during the years at issue. [2] Rosalie had no job skills and no independent means of support; she needed the monthly checks to meet her current living expenses. *64 Petitioner Clark deducted the $2,000 per month as alimony on his Federal income tax returns for the years 1975, 1976, and 1977. Petitioner Rosalie reported the $2,000 per month paid to her by Clark as alimony income on her Federal income tax returns for 1974 and 1975. For the years 1976 and 1977, however, petitioner Rosalie did not report the $2,000 per month received from Clark as income and she filed refund claims for the years 1974 and 1975, excluding the monthly payments from income for those years. In his notices of deficiency, respondent has taken inconsistent positions in order to assure the consistant treatment of the payments from Clark to Rosalie. He has disallowed the claimed alimony deductions to Clark while including the payments in Rosalie's income. ULTIMATE FINDING OF FACT Periodic payments made by Clark to Rosalie during the years in issue were made in discharge of an obligation for support which arose out of the marital relationship. OPINION The sole issue for decision is whether the payments received by Rosalie from her former husband, Clark, are periodic payments in the nature of support or part of the property settlement. If the monthly payments *65 are characterized as support, then they are includable in Rosalie's gross income under section 71(a)(1) and are deductible by Clark under section 215(a). If, however, the payments are characterized as part of a property settlement, then there are no tax consequences to either party. Rosalie argues that her intent during the divorce proceedings was to receive a fair division of her property rights and that the $2,000 a month she received was in exchange for her relinquishment of a portion of the marital property. Clark, on the other hand, maintains that the monthly payments to Rosalie were in satisfaction of his legal obligation to provide for her support. Respondent, in his notices of deficiency, has taken inconsistent positions concerning the payments; he disallowed the deduction to Clark and included the payments in Rosalie's gross income. On brief, however, respondent has taken essentially the same position articulated by Clark, that is, that the payments to Rosalie are in the nature of support. For the reasons set forth below, we agree with Clark and respondent. As relevant to this case, section 71(a) provides that if a wife receives periodic payments in discharge of a *66 legal obligation which, because of the marital relationship, is incurred by the husband under a divorce decree, the payments are includable in her gross income. Section 71(a), however, applies only to payments made in recognition of a general obligation to support which is made specific by the decree. Sec. 1.71-1(b)(4), Income Tax Regs. Payments which are includable in a former wife's gross income under section 71(a) are deductible by the husband under section 215(a). In this case, there is no question that the payments were periodic and made pursuant to a divorce decree. [3] Therefore, the application of section 71(a) and section 215(a) will depend upon characterization of the payments as either support or part of a property settlement. *67 It is well settled that payments received as part of a property settlement are capital in nature and not subject to the provisions of section 71. Gammill v. Commissioner,73 T.C. 921, 926 (1980), affd. 710 F. 2d 607 (10th Cir. 1982); Thompson v. Commissioner,50 T.C. 522, 525 (1968). Thus, the focus is whether the payments are in the nature of support in contradistinction to being in exchange for the wife's relinquishment of some property rights. Warnack v. Commissioner,71 T.C. 541, 550 (1979); Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F. 2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975). The determination of whether payments are in the nature of support or part of a property settlement is a factual question which turns upon the circumstances and intent of the parties. Westbrook v. Commissioner,74 T.C. 1357, 1364 (1980); Hesse,supra at 691. Should we find that there was a substantially equal division of the community property without regard to the periodic payments we would certainly *68 have to conclude that the payments in issue were for support. Warnack v. Commissioner,supra at 551. In Beard v. Commissioner,77 T.C. 1275, 1284-1285 (1981), the following factors were deemed to indicate that payments are in the nature of a property settlement as opposed to support: (1) the parties in their agreement intended to effect a division of assets; (2) the payments were fixed in amount and not subject to contingencies such as death or remarriage; (3) the payments are secured; (4) the need of recipient was a consideration in determining the amount of the payments; (5) there was another provision for support in the decree or agreement; (6) the recipient surrendered valuable property rights in exchange for the payments; and (7) the value of the payments equal approximately one-half of the value of the marital property. Applying these factors to the record herein, we conclude that the payments made to Rosalie by her former husband, Clark, were not part of the property settlement, but were in satisfaction of an obligation for support which arose out of the marital relationship. Warnack v. Commissioner,supra at 551. *69 To ascertain the petitioners' intent concerning these payments, we first examined the agreement entered into by Clark and Rosalie with the advice of counsel. This agreement clearly states that the payments were for Rosalie's support. The agreement provides in relevant part: "[i]n addition to the property settlement herein provided and in recognition of [Rosalie's] marital rights of support based upon the benefits she would have received from a continuation of the marriage" Clark shall pay to Rosalie the sum of $2,000 per month for the rest of her life. This plain language supports Clark's contention that the payments were intended to be in the nature of alimony and deductible by him. Rosalie's testimony that she intended the payments to be compensation for her relinquishment of her marital property rights contradicts the clear language of the agreement, and we do not accept her conclusory and self-serving statements as fact. See South Texas Rice Warehouse Co. v. Commissioner,366 F. 2d 890, 898 (5th Cir. 1966), affg. 43 T.C. 540 (1965), cert. denied 386 U.S. 1016 (1967). Accordingly, we find that the parties intended the payments *70 to be for Rosalie's support. In addition to the petitioners' intent, other factors indicate that the payments were in the nature of support as opposed to part of a property settlement. At the time of the divorce, Rosalie had no job skills and no independent means of support. She required the $2,000 a month to meet her living expenses, and no other provision was made for her support in either the agreement or the divorce decree. Also, the amount of the payments was not fixed; the amount of money she would ultimately receive depended upon whether she remarried and how long she lived. Furthermore, the payments were not secured and were dependent upon Clark's solvency. Finally, Rosalie received more than half of the community property; therefore, she had no other property rights to surrender in exchange for the payments. In support of her position that the monthly payments were part of a property settlement, Rosalie argues that they were received in exchange for her relinquishment of her marital property rights. This contention, however, is premised upon her assertion that the inventory filed with the Harris County court, upon which the agreement and the divorce decree were based, *71 mischaracterized the proceeds Clark received from the sale of his life interest in his grandmother's trust and the $100,000 bequest which Clark received from his grandfather, W. L. Moody, as Clark's separate property.[4] After evaluating the record, we are unconvinced that there was an error in the characterization of Clark's inheritance at the time the divorce decree was entered. The Domestic Relations Court of Harris County, Texas, specifically stated that it was well aware of the fact that Clark had a large amount of separate property. In fact, in order to assist the court and the parties in characterizing their assets as either separate property or community property, the court appointed a Master in Chancery. Clark filed an itemized and verified inventory which clearly identified the community property, his separate property, as well as Rosalie's separate peoperty. To assist the parties in reaching a settlement, the Master *72 in Chancery arranged several meetings with Clark, Rosalie, and their respective attorneys. During those meetings, all parties had access to the inventory and had ample opportunity to examine or question the inventory. The series of meetings concluded with an agreement executed by the parties, with the advice of counsel. This agreement, premised upon the inventory, divided the community property and provided that each party would retain title to his separate property. The agreement was incorporated in full in the divorce decree. At no time during the divorce proceedings, or during the negotiations leading up to the agreement, did Rosalie, or her attorney, ever assert that the inventory mischaracterized Clark's separate property as such or that the community property was undervalued. Indeed, it appears that the first time this argument was raised by Rosalie was in connection with this litigation. After reviewing Texas law, we are convinced that there was no error made in characterizing Clark's inheritance as his separate property.See section 5.01 Texas Family Code ("a spouse's separate property consists of: (1) the property owned * * * by the spouse before marriage; (2) the property *73 acquired by the spouse during marriage by gift, devise, or descent; * * *); Currie v. Currie,518 S.W. 2d 386, 388 (Tex. Civ. App. 1975). Accordingly, we conclude that the proceeds Clark received from the sale of his life interest in his grandmother's trust and the $100,000 bequest from his grandfather were not mischaracterized as Clark's separate property. [5] Moreover, Clark was careful to deposit his inheritances in his special account over which Rosalie had no access. Clark purchased stocks, bonds, and real estate with funds from his special account. In so doing, Clark kept his separate property segregated from the community property. Therefore, the assets that Clark purchased through his special account retained their nature as separate property. See 30 Tex. Jur. 2d Husband and Wife Sec. 75 (1962); Horlock v. Horlock,533 SW 2d 52 (Tex. Civ. App. 1975). Accordingly, we find that the community property acquired during the marriage was *74 properly valued at $586,607.65 as stated in the inventory filed in the Harris County court. Pursuant to the agreement Rosalie received her separate property valued at $41,500 and other property valued at $301,422.62 in satisfaction of her interest in one-half of the community property. [6] It follows, therefore, that since she received a fair portion of the community property and her separate property, she had no other property rights to exchange for her monthly payments.
Upon evaluation *75 of the entire record, we conclude that the periodic payments were in discharge of a legal obligation for support which arose out of the marital relationship and not part of a property settlement.Accordingly, we hold that the monthly payments to Rosalie were alimony under section 71(a) and includable in her gross income. To reflect the foregoing, Decision will be entered for the petitioners in docket No. 8208-79.
Decision will be entered for the respondent in docket No. 9219-79.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The value of the periodic payments at the time of the divorce is $298,738.00.↩
3. On brief, petitioner Rosalie argues that the payments were not made under a legal obligation because Texas law does not provide for alimony. This argument is without merit and has been rejected by this and other courts when there is a contractual obligation to make the payments. Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F. 2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); Taylor v. Campbell,335 F. 2d 841, 845↩ (5th Cir. 1964) (taxpayer's periodic payments to ex-wife were deductible under section 215(a) on the ground that they were in satisfaction of an obligation to support, notwithstanding the fact that there was no legal obligation to pay permanent alimony under Texas law).
4. On brief, Rosalie argues that if Clark's separate property is recharacterized as community property, then, with minimum valuation adjustments, Rosalie received property valued at $318,522.62, while Clark received property valued at $1,121,894.17.↩
5. In reaching this conclusion, we have considered the opinion in Matter of Marriage of Long,542 SW 2d 712↩ (Tex. Civ. App. 1976), but find it distinguishable from the facts of this case.
6. Rosalie also argues that some itmes of jewelry were overvalued and, in the same instant, that the jewelry was mischaracterized as community property. However, Rosalie has failed to convince us that the jewelry was either undervalued or improperly characterized. Welch v. Helvering,290 U.S. 111 (1933). Even assuming that the jewelry was not community property, Rosalie admits on brief that she received additional property valued at $175,817.62. Since she received a substantial portion of the community assets, we are not convinced that the monthly payments from Clark are part of a property settlement. Warnack v. Commissioner,71 T.C. 541, 551, 553↩ (1979).